IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT SPONG and KERRY SPONG | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-10-228 |
| | § | |
| FIDELITY NATIONAL PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| ET AL. | § | |

## OPINION AND ORDER

Before the Court is the "Motion to Dismiss Fidelity National Insurance Services." The Motion was filed by, and only on behalf of, Defendant Fidelity National Insurance Services (Services); it is not expressly joined by the actual WYO carrier and co-defendant in this case, Fidelity National Property and Casualty Insurance Company (Fidelity). In fact, Fidelity has taken the position that this suit against its subsidiary, Services, presents a matter of first impression which deserves individual attention to avoid a landslide of similar groundless litigation against entities, like Services, which, in its opinion, bear no potential liability separate and apart from the liability of the WYO carrier. Having attempted to patiently make its best effort to restrict its focus solely to the issues relevant to the instant Motion, and to resist any temptation to jump ahead to what may well prove to be the appropriate end result of this litigation as a whole,[1] the Court now issues this Opinion and Order.

---

[1] It is important to keep in mind that the Motion to Dismiss is that of Services, not Fidelity, and that the issue of potential preemption of procurement-based claims, although discussed during various hearings, was not raised by Services in its briefing and is not before the Court at this time. The Court is offering no opinion on whether Services enjoys the conflict or field preemption, if any, which might protect the actual WYO carrier against procurement claims; therefore, the effect of Campo v. Allstate Insurance Company, 562 F.3d 751 (5th Cir. 2009)(procurement-based claims not preempted), the responsive regulatory efforts of FEMA to clarify its scope of preemption, and the issue of retroactive application of FEMA's regulatory "clarification" on the case at bar have had no bearing on this Opinion and Order.

This case has been before the Court, directly or indirectly, a sufficient number of times that the Court sees no need to do anything more than "cut to the chase." The thrust of Services argument is that the Spongs have failed to, and cannot, allege "facts" which would state any facially plausible claim against it. While Services may ultimately be absolved of any potential liability, this Court must, at this juncture, disagree with Services' position.

Services' status and supportive role in Fidelity's performance of its obligations as a WYO participant in the NFIP is presently unclear, but there is no question that it was intimately involved in the post-Ike evaluation of the Spongs' claim and jointly responsible for the decision to declare the policy void *ab initio* and deny coverage for the Spongs' loss. There are also factual allegations and documents of record from which it can be inferred that Services administered, or at least shared in the administration of, the Spongs' policy. There are also factual allegations that Services was informed before, and numerous times during, the existence of the original and renewed policies, three times by FEMA itself, that the Spongs' property was believed to be within a CBRA zone and, as such, uninsurable by the NFIP. There are also alleged "facts" before the Court from which it could infer that Services had the ability to inquire into the CBRA status of the Spongs' property, chose not to do so until after it was faced with the possibility of payment for a loss, and only then sought verification of the truth of the previous warnings it had so often ignored.

Accepting, as the Court must, the Spongs' alleged "factual" background as true, the question becomes whether those facts could state any plausible claim against Services. In the opinion of this Court, they can, at the very least, state a plausible negligence claim under Texas

law.  Services argues that it can owe no legal duty to the Spongs to support a negligence claim; however, in <u>Otis Engineering Corp. v. Clark</u>, 668 S.W.2d 307, 309 (Tex. 1983), the Texas Supreme Court held that a trial court must balance several factors in deciding whether to find the existence of a duty in any given case.  A Court must balance the risk, foreseeability, and the likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden guarding against the injury, and the consequences of placing the burden on the Defendant.  Services, in its role of administering the policy certainly had knowledge of the foreseeable risk to the Spongs if their property was within a CBRA zone and their policy were void.  Given the mission of the NFIP to provide government funded flood coverage not otherwise reasonably available in flood prone areas, the social utility of Services to verify CBRA status is great, especially given its superior knowledge of soliciting Park & Wildlife review when a serious question over a possible mis-classification has been explicitly brought to its attention by various reliable sources.  It does not seem too much for the law to require, in light of the foreseeable catastrophic losses of any unsuspecting "uninsurable" policy holder, that Services bear some burden for inquiring into and correcting, if necessary, the improper issuance or renewal of a flood insurance policy subject to its administration.  It is quite plausible that if the facts, once developed through discovery, support the Spongs' present allegations, the Court could find that a legal duty existed which precluded Services from continually ignoring, with impunity, the numerous warnings raised about the mis-classification of the CBRA status of the Spongs' property.

Since at least one of the Spongs' state law claims merit further development, the Court sees little need to address the potential merits of the others at this time. The discovery into each will be similar and summary judgment will prove the best way to resolve the claims. Moreover, if, as Fidelity believes, this is a case of first impression, the Court feels compelled to make every effort to properly decide it on an adequate record, regardless of the frustrations suffered by the Defendants.

For the foregoing reasons, it is **ORDERED** that the "Motion to Dismiss Fidelity National Insurance Services" (Instrument no. 54) is **DENIED**.

**DONE** at Galveston, Texas, this _____8th_____ day of August, 2011.

John R. Froeschner
United States Magistrate Judge