IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT SPONG and KERRY SPONG | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-10-228 |
| | § | |
| FIDELITY NATIONAL PROPERTY AND | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| ET AL. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the Parties under 28 U.S.C. § 636(c), is the Motion for Summary Judgment of Defendants, Fidelity National Property and Casualty Insurance Company and Fidelity National Services (collectively, Fidelity); the Motion seeks the dismissal of all claims asserted against Fidelity by Plaintiffs, Robert and Kerry Spong, as preempted or barred by federal law. The Motion has been fully briefed and argued and is ripe for a determination. Accordingly, the Court now issues this Opinion and Order.

In February 2006, the Spongs entered into a contract to purchase an elevated home in the Caplan Shores Subdivision located on the Bolivar Peninsula in Galveston County, Texas. A prerequisite for their mortgage loan was that the property be insured against flood loss. The only reasonably affordable flood insurance available in the area of the property was through the National Flood Insurance Program. The Spongs contacted the Crystal Beach Insurance Agency (CBIA) and an application for flood insurance was submitted to Fidelity. Unfortunately, for the Spongs, the home they sought to buy was located within the boundaries of the John A. Chafee Coastal Barrier Resources System (CBRS) and, therefore, uninsurable under the program. The Spongs knew nothing about the CBRS, however, Fidelity had express notice, as early as February

22, 2006, that the home was located within its boundaries. Nevertheless, on the basis of a letter from the United States Fish & Wildlife Services (FWS), dated April 15, 2004, Fidelity issued a Standard Flood Insurance Policy (SFIP) to the Spongs effective March 15, 2006; the policy, when issued, was void. On March 16, 2006, the Spongs closed on the home, but they would not have been allowed to do so without the issuance of the policy.

On June 30, 2006, FEMA notified Fidelity that the policy had been determined to be invalid because the property was located within the CBRS, but Fidelity did not notify the Spongs. Instead, Fidelity challenged FEMA's determination on three separate occasions by submitting letters from the FWS that the property was not within the CBRS. On November 13, 2006, Fidelity received another notice, from a third-party service provider, that the property was within the CBRS; once again, Fidelity failed to notify the Spongs. At some point, FEMA revoked, for the final time, its designation of invalidity. The Spongs renewed the policy in 2007 and 2008 and paid the annual premiums.

In September 2008, the Spongs' home was completely washed away by the flooding caused during Hurricane Ike. The Spongs submitted a Proof of Loss claiming $208,300.00 under the SFIP. Fidelity investigated the claim and, in January 2009, concluded the property was, after all, within the CBRS. That finding was confirmed by the FWS, at the request of Fidelity, in an opinion letter dated September 25, 2009. On October 14, 2009, Fidelity denied the claim, cancelled the policy as void from its inception and refunded all premiums to the Spongs. Apparently, at no time prior the cancellation, were the Spongs given any notice of the CBRS dispute between Fidelity and FEMA.

On May 10, 2010, the Spongs filed suit in state court asserting numerous state law tort and statutory violations. Fidelity removed the case to this Court on June 14, 2010. The Spongs sought a remand claiming there was no federal jurisdiction because their suit involved only the procurement of their original policy, however, this Court found that because federal funds were, at least, at risk jurisdiction was present. In 2011, CBIA filed for bankruptcy and all claims asserted against it were severed. On October 15, 2012, the Spongs filed an Amended Complaint which joined the United States as a party due to the allegedly negligent actions of FEMA and FWS. Fidelity now seeks summary judgment.

In Campo v. Allstate Insurance Co., 562 F.3d 751 (5th Cir. 2009), the Fifth Circuit held that federal law does not preempt state law claims grounded on misrepresentations made by a private insurance company acting as a WYO participant during the Plaintiff's initial procurement of coverage under an SFIP. The Court gave two reasons for its decision. First it interpreted FEMA's regulation[1] which reads, "This policy and all disputes arising from the handling of any claims under the policy are governed exclusively by" FEMA regulations, to mean that FEMA "expressly preempted state law only as to handling-related claims." Second, it found that permitting the prosecution of procurement-related state law claims against a WYO company would not impede the Congressional purposes and objectives of the NFIP since "FEMA does not reimburse carriers for procurement-related judgments" because such claims do not involve the interpretation or management of an existing SFIP, but are "grounded on actions taken by the

---

[1]   44 C.F.R. Pt. 61, App. A(1), Art. IX

3

[WYO] Company that are significantly outside the scope of (the) Arrangement" with FEMA to administer the flood program.

Campo, at present, is binding authority in this Circuit, but the Court suspects that the Fifth Circuit, if afforded the opportunity to revisit Campo, will most likely overrule it in light of FEMA's prompt adverse reaction. Just four months after the publication of Campo, FEMA's acting Federal Insurance Administrator issued a Memorandum critical of the Campo opinion. The Memorandum, entitled "Notice of FEMA's Intent to Adopt, by Regulation, a Clarification of the Current Express Preemption Clause of the Standard Flood Insurance Policy" declared, *inter alia*, that

> FEMA *previously* understood and *intended* its regulations to preempt state law claims related to policy *formation* . . . FEMA *understood* and *intended* preemption to apply, particularly where there is a conflict with a Federal regulation on the manner in which policies were administered, and *also* had expressly preempted state law related to claims handling . . . FEMA will review its regulations to determine *whether* clarification is required to fully implement its *intended* scope of preemption. (emphasis added)

Clearly, FEMA's interpretation of its own regulation differed from that made by the Fifth Circuit. While the Circuit's interpretation may have been a reasonable one at the time, "a court must necessarily look toward the administrative construction of the regulation if the meaning is in doubt . . . [T]he ultimate criterion is the administrative interpretation which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." Udall v. Tallman, 380 U.S. 1, 17 (1965) (quoting Bowles v. Seminole Rock Co., 325 U.S. 410, 413-14 (1945), see also, Lyng v. Payne, 476 U.S. 926, 939 (1986) (An agency's construction of its own regulations is entitled to substantial difference.) Since FEMA's now-clarified, but preexisting, interpretation does not appear to this Court to be clearly erroneous or inconsistent with the regulation, its

construction of the regulation is entitled to great deference even though it differs from the construction reached "in the first instance in judicial proceedings." Unemployment Compensation Commission of Territory of Alaska, et al. v. Aragan, et al., 329 U.S. 143, 153 (1946)

Other courts have rejected the reasoning in Campo. In Remund v. State Farm Fire and Casualty Co., 483 F. Appx. 403, 408 n.3 (10th Cir. 2012), the Court expressly refused to follow Campo and held that plaintiff's state-law claims related to pre-issuance misrepresentations of the SFIP's scope of coverage were preempted. In Moffett v. Computer Sciences Corp., 457 F.Supp. 2d 571, 587 (D. Md. 2006), the District Court deferred to FEMA's opinion and found that procurement fraud claims were preempted. In fact, the Fifth Circuit, itself, recently looked to this exact FEMA Memorandum to discern the agency's regulatory intent on another matter. In Grissom v. Liberty Mutual Insurance Co., 678 F.3d 397, 401 n.2 (5th Cir. 2012), the Fifth Circuit found that the "renewal" of an SFIP is not the "procurement" of insurance and cited, with favor, the language in FEMA's post-Campo Memorandum that its regulations preempt "state law claims related to policy formation, *renewal, and administration arising from allegations of WYO company error.*" (emphasis in original)   Given the dispute at issue in Grissom, it appears the Court saw no need to emphasize FEMA's inclusion of "*policy formation*" in the Memorandum while noting "the agency's intent that federal preemption apply to renewals of flood insurance and other activities which occur after the initial policy is procured." Regardless, this Court does not believe that Campo will survive reexamination by the Fifth Circuit.

Unfortunately, for Fidelity, at this time Campo controls. In this Circuit a panel decision of the Court of Appeals is binding on a District Court. Burlington Northern Railroad Co. v. BMWE, 961 F.2d 86, 89 (5th Cir. 1992)   Moreover, one appellate panel "may not overrule the

decision, right or wrong, of a prior panel in the absence of en banc consideration or a superceding decision of the Supreme Court," Pruitt v. Levi Straus & Co., 932 F.2d 458, 465 (5th Cir. 1991), or an intervening change in the law itself.

Perhaps the FEMA Memorandum could be construed as an intervening change in the law by a controlling authority allowing this Court to decide the scope of FEMA's intended preemption of procurement-related claims anew. However, such a proposition is unpersuasive. First, as far as FEMA is concerned, there has been no "change" in the law; FEMA had already intended preemption to apply to procurement-related claims before Campo was decided. Second, although FEMA expressed an intent to adopt a regulation clarifying the express preemption clause of the SFIP, it has not done so; presumably, because, after review, it concluded that, despite Campo, no clarification was necessary. While the Memorandum is some authority, Cf. Stinson v. United States, 508 U.S. 36 (1993) (holding that amendments to the Commentary of the United States Sentencing Guidelines, promulgated in lieu of formal amendment of the Guideline provisions, made while the case was on appeal, were binding on the federal appellate court despite prior judicial construction to the contrary), this Court cannot, in good conscience, rely upon it to justify ignoring the binding effect of the Campo decision.

As an alternative to ignoring Campo, Fidelity argues that a line of Supreme Court cases, most notably Heckler v. Community Health Services, 467 U.S. 51 (1984), bar plaintiff's procurement-related claims on other grounds. According to Fidelity, the Court held in Heckler that insureds participating in a federal insurance program have a legal duty to learn the rules governing the program for themselves and, therefore, cannot sue a fiscal agent of the United States, assisting in the administration of the program, for misrepresentations which caused the

6

plaintiffs to suffer otherwise actionable harm.  But a close reading of Heckler gives this Court pause.  Heckler involved a defendant who had received over $71,000.00 of undeserved Medicare reimbursements from the Government based upon non-binding misrepresentations of the applicable reimbursement policies by Travelers Insurance Company, acting as a fiscal intermediary.  After the Secretary of Health and Human Services reopened the defendant's reimbursement determination and discovered the error, she sued to recover the three years of overpayments.  The Supreme Court barred the defendant's estoppel defense, despite the obvious and substantial adverse affects on the defendant's business, because, *inter alia*, federal funds were involved, the defendant received money "it should never have received in the first place" and the defendant "lost no rights but merely was induced to do something which could be corrected at a later time."  The Supreme Court, however, stopped short of making its holding in Heckler universal:  "we are hesitant, when it is unnecessary to decide this case, to say that there are *no cases* in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." (emphasis in original) Id. at 60-61 n.12 and 13; see Brandt v. Hickel, 427 F.2d 53, 57 (9th Cir. 1970) ("To say to these appellants, 'The joke is on you.  You shouldn't have trusted us,' is hardly worthy of our great government.")

      This might be just such a case.  Here, Fidelity negligently issued an insurance policy it should never have issued.  The commitment, bestowed by Fidelity upon CBIA, to issue the policy was a deciding factor in the Plaintiffs' purchase of the house at, no doubt, a substantial cost to them.  The ultimate invalidation of their policy is not just a denial of the "right" to receive money they "should never have received in the first place," the Plaintiffs now have an economically

uninsurable piece of property that, if marketable at all, has nowhere near the value they paid for it in 2006, and, presumably, they still owe the balance of the mortgage. This is not a situation that can "be corrected at a later time"; the Plaintiffs damages are permanent and directly attributable to their reliance on the alleged misconduct of the government's fiscal agent. It hardly seems just, or decent, to condone the result Fidelity asks the Court to impose in its Motion and, on these facts, the Court cannot do so.

For all of the foregoing reasons, it is **ORDERED** that the Motion for Summary Judgment (Instrument no. 96) of Defendants, Fidelity National Property and Casualty Insurance Company and Fidelity National Services, is **DENIED**.

This Court **WILL** consider permitting Fidelity, upon timely application under 28 U.S.C. § 1292(b), to seek authorization from the Fifth Circuit to prosecute an Interlocutory Appeal of this ruling. Whether procurement-related claims brought against a WYO carrier are preempted by federal law "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from (this) Order (denying the Defendant's Motion for Summary Judgment) may materially advance the ultimate determination of (this) litigation" and future litigation which will, most likely, arise with some regularity in the aftermath of catastrophic hurricanes.

**DONE** at Galveston, Texas, this ____8th____ day of October, 2013.

_____
John R. Froeschner
United States Magistrate Judge